**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**


| | | |
|---|---|---|
| KEITH E. JONES, | ) | CASE NO:    3:09-cv-2898 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | NANCY A. VECCHIARELLI |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

Plaintiff, Keith E. Jones, challenges the final decision of Defendant, the

Commissioner of Social Security, Michael J. Astrue (the "Commissioner"), denying

Plaintiff's applications for a Period of Disability ("POD"), Disability Insurance Benefits

("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social

Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* (The "Act").  The Court has

jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United

States Magistrate Judge pursuant to the consent of the parties under the authority of 28

U.S.C. § 636(c)(2).

For the reasons set forth below, the Court AFFIRMS the final decision of the

Commissioner.

1

# I.  PROCEDURAL HISTORY

On July 12, 2004, Plaintiff applied for a POD, DIB, and SSI benefits, alleging a disability onset date of January 25, 2002.[1]  (Tr. 80, 557.)  The applications were denied initially (Tr. 63, 548), and upon reconsideration (Tr. 60, 544).  On June 29, 2007, a hearing was held before an administrative law judge ("ALJ").  (Tr. 568.)  Present at the hearing were Plaintiff, Plaintiff's counsel, a vocational expert ("VE"), and Plaintiff's mother.  (Tr. 568.)  On August 16, 2007, the ALJ found Plaintiff not disabled.  (Tr. 36.)  On October 17, 2009, the Appeals Council denied review of the ALJ's Decision.  (Tr. 5.)  On December 15, 2009, Plaintiff timely filed this claim.  (Doc. No. 1.)

Plaintiff claims the ALJ erred in five ways:  (1) the ALJ erroneously omitted in his residual functional capacity ("RFC") assessment Plaintiff's need of a job coach for the first two weeks of any employment; (2) the ALJ erroneously omitted in his hypothetical question to the VE Plaintiff's need of a job coach for the first two weeks of any employment; (3) the ALJ failed to give a sufficient explanation for discrediting a consultative psychologist's opinion that some of Plaintiff's work-related limitations were "markedly impaired"; (4) the ALJ failed to give a sufficient explanation for rejecting an assessment of Plaintiff's limited fine finger dexterity; and (5) the ALJ failed to obtain reasonable explanations from the VE for conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT").

---

[1] Plaintiff filed two prior benefits applications, the last of which was filed on June 10, 2003.  (Tr. 19, 85-87.)  These applications were denied on August 26, 2003, and Plaintiff did not appeal the decision.  (Tr. 19, 66-69, 177-78.)

## II.  EVIDENCE

### A.      Plaintiff's Personal and Vocational Evidence

Plaintiff was twenty-four years old on the alleged onset date of his disability (Tr. 34), and twenty-nine years old at the time of his hearing (Tr. 574).  In high school, Plaintiff took special education classes and graduated.  (Tr. 101, 470.)  He previously worked as a bus boy, kitchen worker, dock worker, and amusement park ride operator. (Tr. 181-82, 186.)  Although Plaintiff indicated that he stopped working in January 2002 because of his medical conditions, he explained that he left his job at that time because he was "having problems with co-workers."  (Tr. 181.)

### B.      Plaintiff's Medical Evidence

In May 2000, Plaintiff underwent a vocational evaluation at Goodwill Industries. (Tr. 503-13.)  Chief Vocational Evaluator John Leeming III found, in relevant part, that Plaintiff's fine finger dexterity for manipulating small parts was within the lowest tenth percentile; Plaintiff's fine finger dexterity for working with small tools was within the lowest twenty-fifth percentile; and Plaintiff needed a job coach for the first two weeks of employment.  (Tr. 506-07.)

In July 2003, consultative psychologist Phillip Chase assessed Plaintiff with borderline intellectual functioning, a learning disorder (not otherwise specified), no reported physical problems, and a global assessment functioning ("GAF") score of 70.[2]

---

[2] A GAF score between 61 and 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning.  A person who scores in this range may have a depressed mood, mild insomnia, or occasional truancy, but is generally functioning pretty well and has some meaningful interpersonal relationships.  *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. rev. 2000).

(Tr. 440.)  Testing revealed a verbal IQ of 83, performance IQ of 76, and full scale IQ of 78.  (Tr. 442.)

Dr. Chase opined that Plaintiff's abilities (a) to maintain attention, concentration, persistence or pace to perform simple repetitive tasks and (b) to withstand the stressors and pressures associated with day-to-day work activity were not seriously impaired. (Tr. 441.)  Dr. Chase also opined that Plaintiff's abilities (a) to relate to others, including fellow workers and supervisors, and (b) to understand, remember, and follow instructions were slightly impaired.  (Tr. 440-41.)  Dr. Chase stated that Plaintiff should be able to comprehend and complete simple routine tasks, both at home and on the job. (Tr. 441.)

In August 2003, state agency reviewing psychologist Caroline Lewis opined that Plaintiff had (a) moderate limitations in activities of daily living; (b) moderate limitations in maintaining social functioning; (c) moderate limitations in maintaining concentration, persistence or pace; and (d) no episodes of decompensation.  (Tr. 454.)  Dr. Lewis further stated that Plaintiff could handle one-to-two step tasks.  (Tr. 460.)

In August 2004, internal medicine physician William Padamadan opined that Plaintiff could sit, stand, and walk; and found Plaintiff's upper extremity abilities for reaching, handling, and fine and gross movements intact.  (Tr. 464.)  Based on his evaluation, Dr. Padaman "did not see any indication for limitation of physical activities." (Tr. 465.)

In September 2004, state agency reviewing physician Gerald Klyop opined that

4

Plaintiff could (a) lift/carry twenty pounds occasionally and ten pounds frequently; (b)

sit/stand/walk for about six hours in an eight-hour workday; and (c) push/pull an

unlimited amount.  (Tr. 497.)  Dr. Klyop noted that Plaintiff had full muscle strength.  (Tr.

497.)  He also noted no manipulative limitations, including those related to gross or fine

manipulation.  (Tr. 498.)  In April 2005, state agency reviewing physician Teresita Cruz

affirmed Dr. Klyop's findings.  (Tr. 500.)

In October 2004, licensed psychologist Roger Avery performed a consultative

examination with psychometric testing.  (Tr. 471-78.)  Dr. Avery diagnosed borderline

intellectual functioning (Tr. 476), consistent with a Wechsler Adult Intelligence Scale-III

verbal IQ of 81, performance IQ of 76, and full scale IQ of 77 (Tr. 478).  Achievement

testing showed reading at the sixth-grade level.  (Tr. 475-76.)  Wechsler Memory

Scale-III testing showed functioning from the first percentile to the seventy-fifth

percentile.  (Tr. 475, 478.)  Dr. Avery found most of Plaintiff's work-related abilities

mildly or moderately impaired.  (Tr. 476-77.)  However, he found Plaintiff's ability to

maintain attention, concentration, persistence and pace to perform simple, repetitive

tasks "markedly impaired."  (Tr. 477.)

Also in October 2004, state agency reviewing psychologist Steven Meyer opined

that Dr. Avery's assessment was only partially credible because the finding of "marked

impairment" was inconsistent with the totality of the medical and other evidence.  (Tr.

494.)  Dr. Meyer found that Plaintiff had (a) mild limitations in activities of daily living; (b)

moderate limitations in maintaining social functioning; (c) moderate limitations in

maintaining concentration, persistence, or pace; and (d) no episodes of

decompensation.  (Tr. 489.)  Dr. Meyer concluded that Plaintiff could perform simple

5

and moderately complex routine work that he was motivated to perform, in a setting with regular expectations, intermittent, occasional interactions with others, and few changes. (Tr. 494.)

In March 2005, state agency reviewing psychologist Nancy McCarthy affirmed Dr. Meyer's findings.  (Tr. 494.)

### C.    Hearing Testimony

#### 1.    Plaintiff's Testimony

Plaintiff testified to the following.  At the time of the hearing, Plaintiff was babysitting for his brother-in-law's two children.  (Tr. 577.)  Plaintiff had a driver's license and occasionally drove. (Tr. 575, 601.)  He was "fairly okay" around other people, socialized with friends every few weeks, and went to church every Sunday.  (Tr. 591-93.)  He did household chores (Tr. 600), assisted with cooking (Tr. 597-98), went grocery shopping every few weeks (Tr. 598-99), and played video games (Tr. 594-97).

Plaintiff testified that he could stand and sit only for less than five minutes, and could lift only up to ten pounds.  (Tr. 588.)  He had no problems with grasping or gripping.  (Tr. 588.)  He had problems with concentration and focus, and forgot things easily.  (Tr. 589-90.)  His depression, however, was "pretty much well controlled."  (Tr. 591.)

#### 2.    VE's Testimony

The ALJ asked the VE to consider an individual with Plaintiff's vocational characteristics who (a) could perform light work; (b) could perform only occasional postural maneuvers; (c) could not climb ladders, ropes, or scaffolds; (d) was limited to simple, routine, repetitive, one- to three-step tasks; (e) could not work in a fast paced

6

production environment; (f) was limited to a work environment that would allow for variable but not constant work speeds; (g) could make only simple work-related decisions in an environment that had relatively few workplace changes; (h) could tolerate only brief and occasional interactions with others; and (i) could perform work that would accommodate only a seventh grade reading level, a fifth grade spelling level, and a fifth grade math level.  (Tr. 622.)  The VE testified that such a person could not perform Plaintiff's past relevant work, but could perform other jobs in the national and regional economy:  bagger of garments, laundry folder, and hand packager.  (Tr. 623.)

The ALJ then asked the VE to consider an individual with the same limitations previously mentioned, as well as requiring a sit/stand option allowing the person to occasionally change positions throughout the eight-hour workday while continuing to pay attention to the task at hand.  (Tr. 623.)  The VE testified that the three jobs he mentioned would accommodate a sit/stand option of this sort.  (Tr. 623.)

The ALJ also asked the VE to consider a person with the same limitations previously mentioned (including the sit/stand option), except that such a person could perform only sedentary rather than light work.  (Tr. 623.)  The VE testified that such a person could perform such jobs as hand mounter, surveillance system monitor, and table worker.  (Tr. 623.)

The ALJ then asked the VE to consider a hypothetical person with all the limitations previously mentioned, plus "an inability to sustain or maintain even simple routine unskilled work on a regular and continuing basis . . . due to mental decompensation episodes."  (Tr. 624.)  The VE testified that no jobs existed to accommodate such a person.  (Tr. 624.)

Finally, the ALJ asked the VE to consider a hypothetical person with the limitations that Plaintiff and Plaintiff's mother testified that Plaintiff suffered.  (Tr. 624.)  The VE testified that no jobs existed to accommodate such a person.  (Tr. 624.)

The VE further explained that, in order to maintain competitive employment, "one must be able to stay on task, to be able to complete the job, and to perform the job at least 80 percent capacity of what is being required by the employer."  (Tr. 624.)  A worker had to be able to perform tasks in the order in which the job required them to be performed.  (Tr. at 625.)  However, a worker with fine finger dexterity in the lowest tenth percentile and manipulative abilities in the lowest twenty-fifth percentile would still be able to perform the three jobs identified as light work with a sit/stand option (bagger of garments, laundry folder, and hand packager).  (*See* Tr. at 625-26.)

The VE testified that his testimony was consistent with the DOT and the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO").  (Tr. 625.)

### III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981).   A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and

8

416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

## IV.   SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.     The claimant met the insured status requirements of the Social Security Act through December 31, 2006.

2.    The claimant has not been engaged in substantial gainful activity since January 25, 2002, the alleged onset date.

3.    The claimant has the following severe impairments:  a learning disorder, not otherwise specified with low abilities in reading, spelling, and mathematics . . . ; borderline intellectual functioning . . . ; a history of attention deficit hyperactivity disorder (ADHD) . . . ; a pain disorder . . . ; and low back pain diagnosed as stage II spondylosisthesis/degenerative disc disease (DDD) at the L5-S1 level.

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform unskilled simple, routine, repetitive one to three step tasks at a light exertional level of work . . . as follows:  an option to sit/stand where the individual can occasionally change positions throughout the eight hour work day, yet remain attentive to the task at hand; occasional postural maneuvers; no climbing of ropes, ladders, or scaffolds; no fast paced production environment, and instead a production pace that allows for variable, but not constant work speeds; only simple work related decision making with relatively few work place changes; only brief interactions with others; and the work would accommodate a seventh grade reading level, a fifth grade spelling level, and a fifth grade mathematics level.

6.    The claimant is unable to perform any past relevant work.

7.    The claimant was born on July 21, 1977, and was 24 years old, which is defined as a younger individual aged 18-29, on the alleged disability onset date.

8.    The claimant has at least a high school education and is able to communicate in English.

9.    Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.     The claimant has not been under disability, as defined in the Social Security Act, from January 25, 2002, through the date of this decision.

(Tr. 21-36.)

## V.     LAW & ANALYSIS

### A.     Standard of Review

Judicial review of the Commissioner's decision "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.*  However, the court "do[es] not review the evidence *de novo*, make credibility determinations nor weigh the evidence." *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

"The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  "The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brainard*, 889 F.2d at 681.

11

**B.      The ALJ's Alleged Exclusion of Plaintiff's Need of a Job Coach in His RFC Assessment.**

In 2000, a Goodwill Industries vocational evaluation concluded that Plaintiff needed a job coach for the first two weeks of employment.  (Tr. 507.)  Plaintiff argues that the ALJ improperly excluded Plaintiff's need of a job coach in his RFC assessment. The Court disagrees.

The ALJ recognized Goodwills' conclusion that Plaintiff needed a job coach.  (Tr. 27, 33.)  The ALJ then accounted for that need in his RFC assessment by limiting the type of work that Plaintiff could perform to "unskilled simple, routine, repetitive one to three step tasks consistent with the Goodwill report."  (Tr. 33.)  Although not adopting the specific requirement suggested by Goodwill, the ALJ included functional limitations consistent with Goodwill's recommendation.  Therefore, this assignment of error lacks merit.

**C.      The ALJ's Alleged Exclusion of Plaintiff's Need of a Job Coach in the ALJ's Hypothetical Question to the VE.**

Plaintiff argues that the ALJ's hypothetical question to the VE was defective because it failed to include Goodwill Industries' conclusion that Plaintiff needed a job coach for the first two weeks of employment.  The Court disagrees.  The ALJ's hypothetical question was based on his RFC assessment, which accounted for Plaintiff's need of a job coach.  (*See* Tr. 33, 622.)  Accordingly, this assignment of error lacks merit.

**D.      The ALJ's Evaluation of Consultative Psychologist Dr. Avery's Opinion.**

Consultative psychologist Dr. Avery opined, based on psychometric testing,  that

12

Plaintiff's ability to maintain attention, concentration, persistence and pace to perform simple, repetitive tasks was "markedly impaired."  (Tr. 477.)  Plaintiff argues that, although the ALJ noted Dr. Avery's opinion, the ALJ failed to give a sufficient reason for rejecting it.[3]

The Commissioner responds that the ALJ extensively addressed Dr. Avery's opinion but ultimately gave more weight to the countervailing opinions of two state agency reviewing psychologists.

Plaintiff replies that the ALJ merely *quoted* in his Decision the findings of the reviewing psychologists, who discredited Dr. Avery's opinion based on *their* review of the record as a whole.  Plaintiff alleges that the ALJ never gave his *own* reasons for discrediting Dr. Avery's opinion.  In other words, Plaintiff argues that the ALJ's discussion of Dr. Avery's opinion was merely the ALJ's statement of facts reciting the findings of the reviewing psychologists.  As a mere statement of facts, Plaintiff suggests that the ALJ's discussion was not a substantive evaluation of the record evidence and, therefore, was not a sufficient explanation of why Dr. Avery's opinion was less credible.  (Pl.'s Reply Br. 5.)  The Court disagrees.

Although the ALJ's explanation of why he discredited Dr. Avery's opinion may be in the fact section of his Decision, and it may be largely a recitation of the reviewing psychologists' opinions, it still provides an analysis and reason for giving Dr. Avery's opinion less weight.  The ALJ explained Drs. Meyer and McCarthy's findings, which

---

[3] Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in his Decision the weight given to the opinions of state agency medical or psychological consultants or other program physician or psychologist.  20 C.F.R. § 404.1527(f)(2)(ii).

concluded that the established, overall medical evidence of record, including multiple mental status examinations, Plaintiff's work history, and Plaintiff's prior Individualized Education Program in school, were more consistent with and supported by findings that suggested Plaintiff suffered only moderate limitations.  (Tr. 30, *citing* Ex. 11F (Tr. 494).)  The ALJ further explained Drs. Meyer and McCarthy's reasoning that, because the level of deficit ascribed by Dr. Avery was inconsistent with the overall established medical evidence of record, Dr. Avery's opinion was given less weight.  (Tr. 30 *citing* Ex. 11F (Tr. 494).)

The ALJ stated that he gave more weight to Drs. Meyer and McCarthy's opinions because there was insufficient medical evidence to the contrary, and stated that Plaintiff's RFC was based on those opinions and Goodwill Industries' vocational evaluation.  (Tr. 33.)  Although the ALJ's Decision could have been clearer, the ALJ's explanation is sufficiently articulated in his Decision to allow the Court to understand his reasoning.  Remand is not necessary.  Cf. *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005), *quoting Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.").  Accordingly, Plaintiff's claim that the ALJ failed to give sufficient reasons for rejecting Dr. Avery's opinion is without merit.

      **E.**    **Goodwill Industries' Vocational Evaluation of Plaintiff's Fine Finger Dexterity.**

Goodwill Industries' vocational evaluation noted that Plaintiff's fine finger dexterity for manipulating small parts was within or below the tenth percentile, and Plaintiff's fine

14

finger dexterity for working with small tools was within or below the twenty-fifth

percentile.  (Tr. 506.)  Plaintiff argues that the ALJ failed to give "legally sufficient

reasons" for "implicitly rejecting" these findings.  (Pl.'s Br. 11.)  The Court disagrees.

> The ALJ was not required to address Plaintiff's fine finger dexterity directly:
>
> > An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.  Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (quoting *Loral*

*Def. Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir.1999)).  Goodwill's opinion of

Plaintiff's fine finger dexterity was relevant only to Plaintiff's inability to perform work at a

constant speed.  (Tr. 506.)  The ALJ noted this work-speed limitation and incorporated it

into his RFC assessment.  (Tr. 33.)  Accordingly, this assignment of error lacks merit.

**F.      Inconsistencies Between the VE's Testimony and the DOT.**

Plaintiff argues that three conflicts occurred in the hearing between the VE's

testimony and the DOT, for which the ALJ failed to elicit reasonable explanations from

the VE:  (1) although the ALJ offered a hypothetical person requiring an at-will sit/stand

option, the VE testified to three "light" jobs, which require "prolonged" standing; (2)

although Dr. Avery reported that Plaintiff had an IQ of 81, which corresponds with the

lowest tenth percentile in the population, the three jobs the VE offered require a General

Learning Ability score of 4, which excludes the bottom ten percent of the population;

and (3) although the VE testified that Plaintiff's fine finger dexterity was in the lowest

tenth percentile, the three jobs that the VE offered require fine finger dexterity above the

lowest tenth percentile.

15

Plaintiff argues that, because these conflicts exist, the ALJ was required to elicit reasonable explanations from the VE and to reconcile them pursuant to Social Security Ruling 00-4p; and, because the ALJ failed to elicit such reasonable explanations, the VE's testimony does not provide substantial evidence for the ALJ's Decision.  The Court disagrees.

Social Security Ruling 00-4p provides that an adjudicator must elicit a reasonable explanation from a VE when there is an *apparent* conflict between the VE's testimony and the DOT:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT.  When there is an *apparent* unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.  At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

S.S.R. 00-4p, at 2 (emphasis added).  When an adjudicator asks the VE whether there is a conflict between the VE's testimony and the DOT, and the VE credibly testifies that there is no conflict, the adjudicator may rely on the VE's testimony.  *See Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 606 (6th Cir. 2009).*  "Nothing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct."  *Lindsley, 560 F.3d at 606* (quoting *Martin v. Comm'r of Soc. Sec., 170 F. App'x 369, 374 (6th Cir. 2006)*).  The ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p because that obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the

16

DOT.  *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009).  "The fact that plaintiff's counsel did not do so is not grounds for relief."  *Id.*; *accord Lindsley*, 560 F.3d at 606; *see also Donahue v. Barnhart*, 446 F.3d 441, 446 (7th Cir. 2002) ("The ruling requires an explanation only if the discrepancy was 'identified'—that is, if the claimant (or the ALJ on his behalf) noticed the conflict and asked for substantiation. Raising a discrepancy only after the hearing, as Donahue's lawyer did, is too late.").  *But see Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (explaining that apparent conflicts include those that were so obvious during the VE's testimony that the ALJ should have noticed them and elicited reasonable explanations).

Here, the ALJ asked the VE whether the jobs the VE cited were consistent with the DOT.  (Tr. 625.)  The VE testified that the jobs were consistent with the DOT.  (Tr. 625.)  Plaintiff's counsel did not bring any conflicts to the ALJ's attention at the hearing.  (*See* Tr. 625-27.)  Although Plaintiff can point to the existence of conflicts now, he does not explain how the conflicts were otherwise apparent at the hearing.  *Compare Overman*, 546 F.3d at 463-64 (finding conflicts obvious when the VE contradicted himself during cross-examination, and the ALJ attempted to reconcile these conflicts in his written decision despite having failed to elicit explanations from the VE during the hearing).  There being no apparent conflicts at the hearing, the ALJ was not required to elicit any reasonable explanations from the VE; therefore, the ALJ did not err in failing to do so.

### G.    Substantial Evidence Supports the ALJ's Decision.

Plaintiff alleges that each and all of his assignments of error cause the ALJ's Decision to lack substantial evidence.  However, each assignment of error lacks merit.

17

Moreover, substantial evidence may be produced through reliance on the testimony of a VE in response to a hypothetical question if the question accurately portrays the claimant's impairments.  *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 799 (6th Cir. 2004) (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987))).  Here, the VE testified to a significant number of jobs in the national economy based on a hypothetical question that accurately portrayed Plaintiff's impairments.  Therefore, the Court finds that substantial evidence supports the ALJ's Decision.

## VI.  CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED, and judgment is entered in favor of the Commissioner.

IT IS SO ORDERED.


s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge


Date: September 30, 2010

18